UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **GORDON BRUSH MFG. CO., INC**,<br>a California corporation,<br><br>*Plaintiff,*<br><br>vs.<br><br>**ALLSTAR MARKETING GROUP, LLC**,<br>a New York limited liability company,<br><br>*Defendant.* | Case No:<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff GORDON BRUSH MFG. CO., INC. ("Gordon" or "Plaintiff"), by and through its undersigned attorney submits this Complaint against Defendant ALLSTAR MARKETING GROUP, LLC ("Allstar" or "Defendant") and alleges as follows:

## NATURE OF THE ACTION

1. Plaintiff brings this action to obtain an injunction and monetary damages for trade dress infringement and unfair competition under the laws of the United States – the Lanham Act, codified at 15 U.S.C. §1051 *et seq.*, breach of contract under the laws of Delaware, and the common law of trademark infringement, misappropriation, and unfair competition.

## JURISDICTION AND VENUE

2. This case is a civil action arising under the Lanham Act, 15 U.S.C. §1051, *et seq*. This Court has subject matter jurisdiction over the claims in this Complaint that relate to trademark infringement and unfair competition pursuant to 15 U.S.C. §1121, and 28 U.S.C. §1331 and 1338(a) and (b).

3. This Court has supplemental jurisdiction over this action pursuant to 28 U.S.C. §1367.

4. Venue is proper in this court pursuant to 28 U.S.C. §1391(b) because Defendant is located in this Judicial District and a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this Judicial District.

5. This Court has personal jurisdiction over the Defendant because it is a limited liability corporation registered in New York and located in this Judicial District; Defendant transacts business, derives revenue, and has other related activities within the Southern District of New York; and claims alleged in this action arose in this Judicial District.

## PARTIES

6. Plaintiff is a California corporation with a principal place of business in City of Industry, California.

7. Since 1951, Plaintiff has been a leading manufacturer of specialty, custom and standard brushes for industrial, commercial, and consumer applications.

8. Plaintiff's Made in the United States product lineup includes a stingray shaped product that cleans and massages feet.

9. Defendant is a New York limited liability company with a principal place of business at 2 Skyline Drive Hawthorne, NY 10532.

10. Defendant is a consumer products company and a major marketer and manufacturer for As Seen on TV products.

11. Defendant's product lineup included a stingray shaped product that cleans and massages feet.

## FACTS

12. For over two decades, Plaintiff and Plaintiff's predecessors in interest have manufactured and sold a stingray shaped bath and body product for cleaning and massaging feet ("Plaintiff's Goods) as shown below:



13. Plaintiff's Goods are protected by U.S. Trademark Registration No. 5,796,310 ("'310 Trade Dress").

14. Plaintiff has invested enormous time, effort, and resources in promoting and marketing Plaintiff's Goods under the '310 Trade Dress and has built substantial and valuable goodwill that is symbolized by the '310 Trade Dress.

15. On or about, August 2, 2019, Plaintiff contacted Defendant regarding a bath and body product for cleaning and massaging feet being sold by the Defendant which appeared to raise significant infringement issues with respect to the '310 Trade Dress (Defendant's Goods").

16. Defendant's Goods are in the shape of a stingray as shown below:



17. On or about, December 19, 2019, Defendant and Plaintiff entered into a licensing agreement whereby Defendant would pay Plaintiff a 4% Royalty for all of Defendant's Goods sold prior to and after execution of the licensing agreement.

18. In Section 1(b) of the Licensing Agreement, Defendant was provided with a non-exclusive royalty bearing license to use the '310 Trade Dress with Defendant's Goods.

19. In Section 1(d) of the Licensing Agreement, Defendant agreed that:

> Licensee shall not, directly or indirectly (i) challenge the validity of Licensor's ownership of, or the right to license the Licensed Trademarks or any registration or application for registration thereof; (ii) contest the fact that Licensee's rights under this Agreement are solely those of a licensee and terminate upon termination or expiration of this Agreement; and (iii) represent that Licensee has any right or title to the ownership, registration or use of the Licensed Trademarks in any manner, except as set forth in this Agreement.

20. In Section 1(e) of the Licensing Agreement, Defendant agreed that:

> Licensee shall not assign its rights or obligations under this Agreement or otherwise with respect of the Licensed Trademarks in whole or in part or enter into any sublicense agreement with respect to the Licensed Trademarks, to or with any third party without the express written consent of Licensor, which consent may be granted or withheld in the sole discretion of Licensor.  Any non-permitted assignment or sublicensing shall be void and shall cause this Agreement to immediately terminate, any other provision concerning notice and opportunity to cure notwithstanding.

21. In Section 1(f) of the Licensing Agreement, Defendant agreed that:

> Licensee agrees not to use the Licensed Trademarks with any other trademark, service mark, trade name, logo, symbol or device in combination with the Licensed Trademarks, besides those product(s) set forth in Exhibit B, without Licensor's prior written consent. Licensee agrees that all use of the Licensed Trademarks by Licensee, including all goodwill associated with such use, shall inure to the benefit of Licensor.

22. In Section 1(g) of the Licensing Agreement, Defendant agreed that:

> Licensee agrees that it will not alter, modify, dilute, or otherwise misuse the Licensed Trademarks being licensed hereunder, or bring it into disrepute.

23. In early 2021, Defendant advised Plaintiff of its intent to cease sales of the Defendant's Goods and thus terminate the Licensing Agreement.

24. During the same time, Plaintiff contacted Defendant regarding third-party products being sold on Amazon that appeared to be the Defendant's Goods but were identified as being sold by Beskar and Emoly ("Unauthorized Goods") as shown below:





25. On or about February 25, 2021, Defendant responded that the Unauthorized Goods were not their goods.

26. Upon information and belief, the Unauthorized Goods and the Defendant's Goods emanate from the same source.

27. Upon information and belief, the packaging of the Beskar Product and Defendant's Goods emanate from the same source as shown below:









28. Upon information and belief, the instruction manual of the Emoly Product is packaged with an instruction manual that uses the Defendant's Goods FRESH FEET mark and is nearly identical to the instruction manual included with Defendant's Goods as shown below:

Emoly Product





Defendant's Goods



29. Upon information and belief, Defendant's Goods and the Unauthorized Goods appear to be the same as shown below:

Unauthorized Goods

 

Defendant's Goods



## **FIRST CAUSE OF ACTION**
**Direct Trade Dress Infringement**

30. Plaintiff hereby repeats and realleges the foregoing Paragraphs of the Complaint as if fully set forth herein.

31. Upon information and belief, Defendant is the source of the Unauthorized Goods.

32. The Licensing Agreement required that Defendant obtain Plaintiff's written consent to use the '310 Trade Dress with products other than Defendant's Goods.

33. Plaintiff did not provide written consent to Defendant to use the '310 Trade Dress with any other goods besides Defendant's Goods.

34. The stingray shape of Plaintiff's Goods, Defendant's Goods, and Unauthorized Goods is non-functional.

35. The stingray shape of the Plaintiff's Goods, Defendant's Goods, and Unauthorized Goods has acquired secondary meaning.

36. The likelihood of confusion is heightened as the stingray shape of Plaintiff's Goods, Defendant's Goods, and Unauthorized Goods is identical.

37. The likelihood of confusion is heightened as the Plaintiff's Goods, Defendant's Goods, and Unauthorized Goods are identical products, i.e., bath and body product for cleaning and massaging feet.

38. The likelihood of confusion is heightened as the Plaintiff's Goods, Defendant's Goods, and Unauthorized Goods are both marketed on Amazon to consumers looking for a bath and body product for cleaning and massaging feet.

39. The likelihood of confusion is heightened as the Plaintiff's Goods, Defendant's Goods, and Unauthorized Goods are inexpensive products that are purchased by the general public.

40. Consumers looking for the stingray shaped foot product are likely to confuse the source of Plaintiff's Goods, Defendant's Goods, and Unauthorized Goods.

41. As a direct and proximate result of Defendant's wrongful acts, Plaintiff has suffered damages including but not limited to, actual, nominal, costs, and attorney's fees in an amount to

be determined at trial. Furthermore, Plaintiff is entitled to a temporary and permanent injunction preventing Defendant from infringing upon Plaintiff's Trade Dress.

## SECOND CAUSE OF ACTION
### Willful Trade Dress Infringement

42. Plaintiff hereby repeats and realleges Paragraphs 1-29 of the Complaint as if fully set forth herein.

43. Upon information and belief, Defendant is the source of the Unauthorized Goods.

44. The Licensing Agreement required that Defendant obtain Plaintiff's written consent to use the '310 Trade Dress with products other than Defendant's Goods.

45. Plaintiff did not provide written consent to Defendant to use the '310 Trade Dress with any other goods besides Defendant's Goods.

46. The stingray shape of Plaintiff's Goods, Defendant's Goods, and Unauthorized Goods is non-functional.

47. The stingray shape of the Plaintiff's Goods, Defendant's Goods, and Unauthorized Goods has acquired secondary meaning.

48. The likelihood of confusion is heightened as the stingray shape of Plaintiff's Goods, Defendant's Goods, and Unauthorized Goods is identical.

49. The likelihood of confusion is heightened as the Plaintiff's Goods, Defendant's Goods, and Unauthorized Goods are identical products, i.e., bath and body product for cleaning and massaging feet.

50. The likelihood of confusion is heightened as the Plaintiff's Goods, Defendant's Goods, and Unauthorized Goods are both marketed on Amazon to consumers looking for a bath and body product for cleaning and massaging feet.

51. The likelihood of confusion is heightened as the Plaintiff's Goods, Defendant's Goods, and Unauthorized Goods are inexpensive products that are purchased by the general public.

52. Consumers looking for the stingray shaped foot product are likely to confuse the source of Plaintiff's Goods, Defendant's Goods, and Unauthorized Goods.

53. With full knowledge of Plaintiff's rights, Defendant acted with a deliberate disregard of a Plaintiff's rights.

54. As a direct and proximate result of Defendant's wrongful acts, Plaintiff has suffered damages including but not limited to, actual, nominal, costs, and attorney's fees in an amount to be determined at trial. Furthermore, Plaintiff is entitled to a temporary and permanent injunction preventing Defendant from infringing upon Plaintiff's Trade Dress.

## THIRD CAUSE OF ACTION
### Indirect Trade Dress Infringement

55. Plaintiff hereby repeats and realleges Paragraphs 1-29 of the Complaint as if fully set forth herein.

56. Upon information and belief, the Unauthorized Goods and Defendant's Goods are produced by the same manufacturer or manufacturers.

57. Upon information and belief, Defendant has provided tools and materials to a Chinese supplier to produce the Defendant's Goods.

58. Upon information and belief, Defendant is aware that the Chinese supplier may reasonably be expected to use Defendant's tools and materials to produce goods that infringe the '310 Trade Dress.

59. Upon information and belief, Defendant's tools and materials were used to produce the Unauthorized Goods.

60. The stingray shape of Plaintiff's Goods, Defendant's Goods, and Unauthorized Goods is non-functional.

61. The stingray shape of the Plaintiff's Goods and Unauthorized Goods has acquired secondary meaning.

62. The likelihood of confusion is heightened as the stingray shape of Plaintiff's Goods and Unauthorized Goods is identical.

63. The likelihood of confusion is heightened as the Plaintiff's Goods and Unauthorized Goods are identical products, i.e., bath and body product for cleaning and massaging feet.

64. The likelihood of confusion is heightened as the Plaintiff's Goods and Unauthorized Goods are both marketed on Amazon to consumers looking for a bath and body product for cleaning and massaging feet.

65. The likelihood of confusion is heightened as the Plaintiff's Goods and Unauthorized Goods are inexpensive products that are purchased by the general public.

66. Consumers looking for the stingray shaped foot product are likely to confuse the source of Plaintiff's Goods and Unauthorized Goods.

67. As a direct and proximate result of Defendant's wrongful acts, Plaintiff has suffered damages including but not limited to, actual, nominal, costs, and attorney's fees in an amount to be determined at trial. Furthermore, Plaintiff is entitled to a temporary and permanent injunction preventing Defendant from infringing upon Plaintiff's Trade Dress.

## FOURTH CAUSE OF ACTION
### Breach of Contract
### Non-payment of Royalties on Defendant's Goods

68. Plaintiff hereby repeats and realleges Paragraphs 1-29 of the Complaint as if fully set forth herein.

69. Defendant's obligation, as indicated in the Licensing Agreement, is to pay a royalty for all sales of the Defendant's Fresh Feet product on and after December 19, 2020.

70. On October 4, 2021, Plaintiff contacted Defendant regarding Defendant's listing on Amazon for their Fresh Feet product (ASIN B07KWF995Y).

71. That same day, Defendant responded that it was an old listing that some other seller – unknown to Defendant – was using.

72. Responsive to Defendant's assertion, Plaintiff filed a takedown notice with Amazon to remove the listing.

73. On October 13, 2021, Plaintiff received an email from Defendant indicating that the sellers – using the now removed Defendant's listing – were selling legitimate Fresh Feet products.

74. Included with the email were several invoices showing transfer of title to the Fresh Feet products.

75. On or about the same day, Plaintiff received email correspondence from The Mazal Company requesting us to retract our October 4th takedown notice.

76. On January 22, 2020 and February 3, 2020, Defendant sold 33,672 units to Malfal International.

77. Upon information and belief, these units are not shown on any royalty report to Plaintiff.

78. As a direct and proximate result of Defendant's wrongful acts, Plaintiff has suffered damages including but not limited to, actual, nominal, costs, and attorney's fees in an amount to be determined at trial.

## FIFTH CAUSE OF ACTION
### Breach of Contract - Unauthorized Goods

79. Plaintiff hereby repeats and realleges Paragraphs 1-29 of the Complaint as if fully set forth herein.

80. Upon information and belief, Defendant is the source of the Unauthorized Goods.

81. The Licensing Agreement required that Defendant obtain Plaintiff's written consent to use the '310 Trade Dress with products other than Defendant's Goods.

82. Plaintiff did not provide written consent to Defendant to use the '310 Trade Dress with any other goods besides Defendant's Goods.

83. As a direct and proximate result of Defendant's wrongful acts, Plaintiff has suffered damages including but not limited to, actual, nominal, costs, and attorney's fees in an amount to be determined at trial. Furthermore, Plaintiff is entitled to a temporary and permanent injunction preventing Defendant from infringing upon Plaintiff's Trade Dress.

## DEMAND FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in Plaintiff's favor on Counts I through V of their Complaint against Defendant, and grant Plaintiff the following relief:

   a. An award of all available damages, including, but not limited to: damages for Counts I through V, compensatory, actual, and consequential damages, and any profits gained.

   b. An injunction restraining Defendant and their associates, agents, servants, employees, representatives, licensees, successors, assigns, and all those acting for them and, on their behalf, from infringing Plaintiff's Trade Dress.

    c.  An award of attorneys' fees, costs, expenses, and pre-judgment and post-judgment interest at the highest rate allowable by law on all counts available.

    d.  Such other relief as this Court deems just and proper.

Dated: July 13, 2022

                                                                                        Respectfully submitted,

                                                                                    */s/ Leon G. Rendeiro Jr.*
                                                                                     Leon G. Rendeiro, Jr.
                                                                                     Henderson, Franklin, Starnes & Holt, P.A.
                                                                                     1715 Monroe Street
                                                                                     Fort Myers, FL 33902
                                                                                     lee.rendeiro@henlaw.com
                                                                                     Phone: 239.344.1517
                                                                                     FBN – 1009360
                                                                                     *Attorney for Plaintiff*